All right. Thank you. All right. We are ready. You may, you may be seated. We're ready for our next case. Clarence Davis v. Capital One N.A. All right. And is it, is it, is it Wortham? Wortham. Wortham. All right. First we'll hear from Mr. Wortham and then we'll hear from Mr. Hubbard. Thank you, Your Honors. May it please the Court, my name is James Wortham and I represent Clarence Davis in this matter. Mr. Davis received illegal calls from Capital One which violated the Telephone Consumer Protection Act and he has a judgment against Capital One for those violations. Mr. Davis was not a customer of Capital One and received these calls from Capital One. Mr. Davis sought to represent a class of people similarly situated to himself and he defined his class in such a way that it was clearly ascertainable under Fourth Circuit precedent. That precedent allows certification if a court can readily identify the class members in reference to objective criteria at some point in time. And numerous cases including the Mr. D. Inc. v. Enmar case recently decided by this court in 2025 have held that to be the standard of ascertainability. A proposed class is ascertainable where class-wide data allows for identification of class members on a large-scale basis. And the trial court in this case erred in applying too strict a standard, too rigid a standard of ascertainability. How is this class ascertainable? It's ascertainable in a number of ways. We have records from Capital One about whether there were pre-recorded calls. So that item is taken care of from Capital One's records. So you know who was called, but you don't know whether those people gave consent to be called? We know they didn't. How do we know that? We know they didn't give consent to be called because the class is defined as non-customers of Capital One. But how can those be ascertained? You point to this R&D database, but that was only developed in 2021 and your class goes prior to that. So even your client was not in the R&D database, isn't that right? No, that's not correct, Your Honor. He was in the R&D database. And in fact, the R&D search of his records showed the exact date of disconnect. But the main point of that is that the R&D database was one method of identifying these people. So what were the others? The others were the cellular carrier phone records, which have the date of disconnect and the date of who had the phone at what period of time. Isn't it true that there are states that don't provide those records, California and Pennsylvania being two of them? I don't know that they don't provide those records. They provide them with a court order. I don't believe any carrier has the right to ignore a court requirement that they provide records. And likewise, Capital One's own records have an identification of right number, wrong person, which tells you also that they have been specifically told and noted in their own records that they have reached the wrong person. Well, it's my understanding that both California and Pennsylvania only allow for disclosure if the customer consents. And California and Pennsylvania, that's a huge fraction of the population of the country. In fact, I think your own client is resident of Pennsylvania, so he wouldn't even be subject to that subpoena unless he gave consent. And I also understand that he didn't give consent. Yes, so Mr. Davis's records were subpoenaed, were produced in this case. They are available pursuant to a subpoena. Again, I don't think either California or Pennsylvania have the option of ignoring a subpoena. They don't make it as easy as some of the other records you can get from other states, but they are readily available and can be determined. But there are three processes we have put in place here to help identify these people during this period of time, which is the carrier records, the Capital One's own records, which identify wrong number calls, if you will. And then the R&D database, which is, while it was a limited period of time, it is the database of wrong number disconnects that is also subpoenable. I see you started on the issue of ascertainability, but I guess you got to first address the reliability of the methodology of your expert under 702, because you would have to have your expert to testify to the ascertainability under 702, and the district court found that your expert was not, I guess, qualified. The methodology was not qualified because of reliability. So I think you're going to have to, that hurdle first, and then we can probably talk about it. I'm happy to talk about that hurdle, Your Honor. I would disagree with one thing the court said, which is that the expert is required to identify class members. The expert is a person whose job is to identify class members. And if you think about what we're doing here, we're giving notice to people that they may be in this class. And if you look at that standard, you know, when you apply a Dawbert standard, and I don't concede necessarily that the Dawbert standard is appropriate at this point of the procedural aspects of class certification, but even if you look at the Dawbert standard, it has to be applied to the appropriate element. And if you're looking at an element which is at some point in time you have to be able to identify these people, the court applied a two-stride end or two-rigid standard of ascertainability and then applied a two-rigid standard of 702 to that ascertainability standard. But I would say to this court that we did not need an expert to identify these class members. Again, it is people who have cellular phones. That's an easily identifiable thing. No one disputed that. There is prerecorded calls. Those are identified by the Capital One records. And then who had the call at a given point in time can be determined by the carrier records and Capital One's designations of wrong person, right person, right number, wrong person. The reason there is the experts. So you would just be relying solely upon the records from Capital One? I'm trying to, you're saying you don't have, you don't need an expert. Capital One and the carriers. And the reassigned number database is subpoenaed to them to determine the dates of disconnect. This is simply a process of who had the phone number at the time of these prerecorded calls, right? So if you can determine who they were calling, in this case they were trying to get a person, and we'll call them ET to leave his name out of the record, and they got Mr. Davis because the phone number had been disconnected and transferred to Mr. Davis. The reason we have the expert and the reason the expert was presented is this is a person who does this on a regular basis. So they can do it faster, better, easier, but it is not required for that expert to be the one who does this analysis. But perhaps where I'm struggling is you need to have to be able to, in order to define the class, you have to be able to say a methodology, and there has to be somebody that's going to testify as to that methodology. And where I'm struggling here is that your expert didn't present a methodology that was actually proven. It was a theoretical methodology. And so how is the court to find that all of the four requirements of 702 were met? Are you suggesting that 702 doesn't apply to this expert or just Daubert? I would suggest that 702 does apply. And so the fourth prong is that the expert's opinion reflects a reliable application of the principles and methods to the facts of this case. So how is the district court to determine whether that fourth prong was met here? The district court looked at part of her analysis. That was the problem. First, it used too rigid a standard under 702. This court has said many times that 702 is to be liberally construed. This is not a trial of fact-finding. It is a preliminary stage of the process. But the court ignored subpoenas to the carriers. The court ignored the wrong number designation in Capital One's record. The court ignored a subpoena to the R&D in its analysis. So it focused on a subpart of the analysis instead of focusing on the entire process that the expert presented. I don't know if the court ignored it. I think your expert said that she didn't run the full methodology because of financials. That's why she didn't go on the sample. She had a sample of 5,666. She said, I didn't take the next step getting the subpoenas because of the financial strain or restrictions or something. That was part of her reasoning, Your Honor. But there's no class that's been certified at this point in time. So the court could change the class definition as we go along. And that's why it is really the temporal aspect of the ascertainability standard that has not really been made clear by this circuit. It's basically set at some point in time. At some point in time cannot be the class certification point in time. Or you wouldn't say then at some point in time. And if you look at the Krakauer case, which is very, very similar in almost every respect to this case, there was a review of ascertainability at the class certification stage. There was a review of ascertainability at the class notice stage. There was a review of ascertainability at the trial stage, and there was a review of ascertainability post trial. So this is not a set in stone, you must prove this, and certainly this court has never said that, you must prove this at the class certification stage. But in that case, that was different because that was the do not call registry, right? And so you have people that signed up and said do not call me, and then they were contacted. That's correct. Which is a little bit different here. I mean, because you had the numbers, and then you could just go look at the database and see who was contacted. Whereas here, you got this consent element, like who consented. I mean, they didn't have that in that case, and I think that's the difference in that case than the one here. You got this element of consent. So, I mean, I could have a work phone. And so based on the methodology, I think what you're saying is I can go this reverse, I think, looking at numbers, you can go back and see who owns the phone? But if it's my work phone or if my spouse has the phone in their name, how are you going to know who consented and who's not? Because, I mean, it seems like you would have to go through it individually and look at it. No. If I may go back, consent is a part and was a part of the Krakauer case. And if you read what the Krakauer court said about consent, it said the defendant's records are going to show whether somebody consented. It's actually probably a higher level of consent inquiry than in our case, because we have defined the case as non-customers. If you have non-customers, those people, by definition, have not given consent. As far as your other question, the issue of who had the phone can be determined by the records. If you look at Mr. Davis' phone records, it showed Mr. E.T. had the phone until this date. Mr. Davis took it over on this date. The Capital One records show there were calls made to that phone number after the date Mr. Davis took over. That's Mr. Davis. A class action is a mechanism where a group of people all have the same characteristics or some common characteristic, and they come together. Where I think your argument falls short is that your client had this particular story with his cell phone, and the experts testified that the way he was ascertained isn't the same as you would ascertain another member of the class. Even when you began, you gave a whole bunch of different mechanisms that we sort of had to look to together and somehow pile them together to create a class, and that seems to me not feasible, frankly. Your Honor, if I may, and I'm sorry, I'm out of time. The class is people who got pre-recorded calls from Capital One without consent. I understand. I think what we're struggling with is how we figure out who was in that class. I think you have time. Yes, you have seven minutes reserved. Yes, sir, Mr. Hubbard. Good morning. Good morning. May it please the Court. Capital One has perhaps one main point that we'd like to make in response to this appeal, and that is that the trial court did not deal in hypotheticals. The trial court's decision was directly drawn from an extensive record of documents and the base of the decision on sworn testimony and those documents. Just like any other class action, the appellant in this case had to meet their burden to show that the claims were appropriate for class certification under Rule 23. They made a strategic decision to meet this burden based solely upon the testimony of the expert opinion of Ms. Verkovskaya, even though Ms. Verkovskaya repeatedly said in her deposition that ascertaining or identifying class members was beyond the scope of her retention. On the appeal, the appellant must show that the trial court abused its discretion by making a legal error or basing its decisions on a clearly erroneous factual finding, and we believe that they can do neither. How are the claims in this case different from the Krakauer case? Yes. Well, as the court noted, the Krakauer case is different, and I would draw the court's attention. Capital One actually addressed this in the briefing below in the motion to exclude, and I would draw the court's attention to the joint appendix at 253. There is a chart, a table that Capital One created where we listed out the steps of the methodology that Ms. Verkovskaya used in Krakauer on one side and then compared the methodology proposed in this case on the other, and not a single step matched. And there's good reason for that because, as the court has already noted, the Krakauer case was a TCPA case, but it was under a different section of the TCPA. It was brought under Section 227C for a violation of the Do Not Call Registry. And in that case, the defendant's agent had made telemarketing calls to a list of phone numbers from one of their competitor's customers. And so from that starting point alone, you have a defendant who has no consent to call those telephone numbers. And so based on those facts, the court ruled that the class in Krakauer was readily identifiable by comparing the Do Not Call Registry with the aggregate records of the defendant. That list included the class members. This is different in our case, and our position is wrong number TCPA cases like this are just simply different from that. In fact, in Krakauer, again, you start from the premise of the defendant lacked consent to do telemarketing. Capital One's not a telemarketer. The evidence showed that it only makes calls to telephone numbers that associate with an account. And so it's not a telemarketer. So in this case, contrary to Krakauer, we start with the premise, well, the evidence showed Capital One had consent, believed it had consent or had consent at a certain time to call all of the numbers. And the trick here for the appellant would be to provide a reliable methodology to figure out, well, which ones don't have consent and do so in a way that's appropriate as a class. Well, you concede that you didn't have consent to call Mr. Davis. Isn't that right? There's no dispute that Mr. Davis, the evidence showed Mr. Davis was not a customer and Capital One did not have consent to call Mr. Davis' telephone number. So it's not the case that you had. I mean, you just said that you had consent to call all these. You believe you had consent to call all these numbers, but in fact you're aware that you didn't have consent to call Mr. Davis. Yes, and I should correct that. At the time that Capital One was calling the telephone number, the 8329 number at issue with Mr. Davis, Capital One believed that it had consent, and that's what I mean. And during the class period, what mechanism did Capital One take to ensure that it actually had consent to call all of these numbers? Did Capital One check, for example, the RNC database during that time period to make sure that it actually had continued consent to call all of these numbers? So the evidence indicated that Capital One does not use the R&D, the FCC's R&D database. It doesn't use it even to this day? I understood that it does use it now. No, Your Honor, there's no evidence for that. What the evidence did show was that Capital One uses a private vendor that develops a scoring mechanism for the, essentially, the likelihood of associating those telephone numbers on a continuing, on a forward-going basis. And, you know, this is in the testimony from Capital One's representative. They would contend that that private vendor provides a service that is better than the R&D's service. That's what the actual evidence showed. So Capital One has no desire to contact non-customers in this way or leave voicemail messages where they don't have consent. So they do endeavor to avoid violations of the TCPA like this. So there is a system, at least a system in place, for as long as they're making telephone calls. So could we talk about the expert for a minute? Yes. So she's testified as an expert and qualified as an expert in, I understand, over 1,000 cases. Is that right? That was her testimony. Yes. And my understanding is that, at least below, what she said was that she didn't follow through on the entirety of her analysis at the class certification stage, is that going through the entirety of the analysis would be too expensive and too onerous. So she, I guess, went through the first two steps, showed how they narrowed the pool, but then didn't carry out the final two steps. And what the district court found was that then, because she didn't go through the entirety of her analysis, that she was not qualified. Is that right? Is that what happened? The district court did note that she did not apply her analysis. It's our position that the appellant wants to push that a little bit further than what the district court actually ruled. The district court, the appellant is claiming that the district court abused its discretion, and one of those ways was applying an incorrect standard of ascertainability by requiring the appellant to identify all the class members or fully conduct her methodology. But the district court didn't say that, and it's demonstrably incorrect. In the opinion, the court's opinion, the court ruled Davis, quote, need not be able to identify every class member at the time of certification. That's in the opinion of the joint appendix 675. What the trial court ruled was that, just like any other class action, the appellant needed to provide a methodology that would produce, that was reliable. And is it your opinion that that methodology had to be performed in full? It's not our opinion that it had to be performed in full, but when it was performed, the undisputed facts indicated that it contained numerous errors along every single step of the way. Capital One, and this is, you know, Capital One retained its own expert that performed steps of the analysis as well and demonstrated that the results were contrary to what Ms. Verkovskaya predicted. But it's not just Capital One's expert. There was sworn declarations from the administrator for the R&D, Ms. Beth Sprague, and she testified that, contrary to what Ms. Verkovskaya said, the R&D does not provide a disconnection date, which was a big part of Ms. Verkovskaya's testimony. She further said you can't use the R&D like this. Additionally, Ms. Verkovskaya, she had to have a licensed vendor to run searches through the R&D, and that licensed vendor was Pacific East. Pacific East. The chief operating officer for Pacific East, Scott Rice, he submitted a declaration where he said no, the R&D does not provide a disconnection date and can't be used to, you can't backdoor it either. You'd have to. You know, usually all of this weighing goes to the weight of the evidence and not whether it's admitted in the first place. The arguments you're making are great arguments for why her analysis isn't as good as your experts. It doesn't seem to go to whether or not she's admitted as an expert in the first place, whether her analysis will even be considered. Here, the district court didn't even admit it and disqualified her as an expert. And what you're really getting to is looking at the analysis and comparing the analysis of your experts versus hers. The sort of war of the experts was never even allowed to happen here. Well, Your Honor, I'd say that this court has repeatedly held, including in the Sardis case, that the trial court serves a very important gatekeeper function to ensure the exclusion of unreliable and irrelevant expert opinions. You can't say this is irrelevant. Well, if she testifies repeatedly that she has nothing to do with identifying class members and then, I mean, I don't know what irrelevance is. I mean, we, as a practical matter, classes are certified. We retain, we have class administrators all the time. I'm not sure why a class administrator would be coming in as an expert in the first place. Now, the trial court ultimately held, look, the appellant is basing their entire motion on Ms. Verkovskaya's method, so the trial court disagreed and assumed that it was relevant to the discussion here. But what happened was, based upon the facts, her methods were shown to be unreliable, and not just, this is not, I would say this is not a battle of the experts, for example, trying to set the industry standard of reasonableness, for example, and then you have someone disagrees with that. This is where a purported expert comes in and says, many things about several different steps, four different main steps here, and each one of those had multiple errors within it. If there is any reliable, reliability requirement under 702, Ms. Verkovskaya, based upon, again, based upon the actual facts, testimony in the case, Ms. Verkovskaya didn't come close to showing any reliability. And we believe that that's where the trial court was, that's what the trial court was getting at. Do you believe that the plaintiffs have to have an expert in this case? I don't think that they need to have an expert, but obviously for class certification, they have to meet the requirements under Rule 23, and this is the way they have that burden, and this is the way that they chose to do this. We deposed Ms. Verkovskaya, and I asked her, you know, I did ask her, well, why are you here? If this is just you're relying on vendors to run searches, what do you bring into this? And she said in her testimony that only she could run this. So, and we've heard today that, well, actually the attorneys could run it, but this is part of the kind of moving target of Ms. Verkovskaya and the arguments as well. But it's not clear to me, I mean, frankly, most of it was just paying vendors. We went and spoke to the vendors, and they said, you can't use our services for what you're saying you're using them for. And your expert's opinion was admitted without objection. Is that correct? There was no objection, yes. We would say ultimately the appellant argues that the judge came to the wrong decision on Ms. Verkovskaya, but one of the ways that we've, one of our, the best way to illustrate the errors in her proposed methodology is by applying them to Mr. Davis himself. And here the court, the trial court did note that her own method, that Verkovskaya's methodology actually did not pick up Mr. Davis. And we can just walk through the steps very quickly. The R&D, the R&D just simply, well, it didn't provide the disconnection date. So contrary to Ms. Verkovskaya's testimony, it can't do that. That's according to the administrator, Verkovskaya's own vendor, and our expert. The R&D returned a, it did return disconnected for the telephone number, but it said disconnected for the time period prior to Mr. Davis having that number, during the time he had that number, and after the time. He only had it for about a month. So disconnected is not a reliable indicator of class status if you're identifying our customer, Mr. Davis, and then perhaps someone else that was never called. So he, but I believe one of what she said is that she has a second step, which would be the subpoenas. I mean, with that, even though she did not, she was not able to answer the questions, I believe, regarding the process of the subpoenas. But would a subpoena process, as to the carrier, clarify any of that? So the subpoena process is very interesting. So on a class basis, you would be dealing with a truly, what we would say, Herculean, monumental, very, a large amount of information. And I think, again, the method was changing throughout the briefing and arguments. But by the end of it, I believe that at the oral argument for class certification, the plan was to, I think they just said, they got to a point of just subpoenaing 14.9 million unique telephone numbers from an unknown amount of carriers, I guess, in the United States. This could be dozens and dozens and dozens. So that, we would submit, would be not feasible for class administration. Now, again. Can you address the issue of, just because you don't have a lot of time, can we just assume that the exclusion of the expert was erroneous and ascertainability is satisfied? Can you address the predominance issue? Yes. So the predominance issue came down to, the trial court ruled that it came down to the issue of consent and that there was no way to develop a common question to get a common response on the consent issue. In the appeal, the appellant argues that they have, it's very easy to solve. They just, with their definition, they just said non-customers. But the trial court correctly rejected that argument. This is a semantics type of argument. You can either call it non-customers or people who didn't give consent. It's a distinction without a difference. You're going to run into the same problems with the methodology that they proposed that we've covered over and over again. So that wouldn't solve their problems. And then I believe the only other argument on appeal that they've made is that, well, they point back to Ms. Verkovskaya's methodology again. And as we've indicated, there are several problems with that. With regard to the subpoena, Ms. Verkovskaya never issued a subpoena on Mr. Davis either. It was actually Capital One. We subpoenaed the cell phone carrier T-Mobile. They eventually produced documents after requiring a court order to do so. As the court correctly noted, that would be an additional issue. When we got the response from T-Mobile, they indicated that the subscriber was not Mr. Davis. Instead, it was a Kyle Devin, which was a pseudonym created by Mr. Davis, that he gave the telephone company to, for whatever reason, to conceal any association with the telephone. So right there, you're even still getting to a review. And the response itself was a review that would involve at some point some sort of judgment call, I guess, from Ms. Verkovskaya. The response from T-Mobile was 92,000 lines long. So what we're talking about would be a subpoena process to almost 15 million unique telephone numbers to any cell phone carriers. All that's going to come in. We're going to have – I mean, it's just – you're getting into numbers that I can't do in my head, unless the court has any further questions. Any questions? Thank you. Yes, sir. Your Honor, I'd like to address some of the points that have been raised by Mr. Hubbard earlier on. I'd like to point this court to the decision made by the Middle District of North Carolina on February 18th, 2025 in the case of Stark v. Blue Cross of North Carolina. That was a wrong number case that was just recently decided. And there, the court held that the class's members are readily identifiable. The class is defined by objective criteria, whether consumers' phone numbers appeared in defendant's call records, and whether they were Blue Cross customers. The court went on to say any other remaining class members were readily identifiable upon production of records and evidence linking them to the relevant phone numbers. I would submit to you that that is the – now, that was a settlement class. I will say that as we go forward, but the standard of ascertainability is the same. The amount of records that needed to be reviewed is not a relevant criteria. This court has held dozens of times that it is not the amount of information that is required to be reviewed that is at issue. It is whether or not the records and information that is identified can answer the objective criteria in a yes or no manner. Was the case you just cited in your briefs? It wasn't because it was decided just three or four weeks ago. Did you file a 28-J letter with that case? We did not, Your Honor. It was literally just decided a few weeks ago. And you didn't provide it to your opposing counsel prior to argument? I did not, Your Honor. But I think the decision and other decisions, if you look at the decisions made by this court and even the lower courts, apply these standards in a very haphazard kind of way. There's no consistency. And I would submit to you that if you look at how Judge Trenga applied these standards, it is much more rigid than any other court or any of the Fourth Circuit decisions permit. If we ask about this expert exclusion, and I think Judge Berner is absolutely correct, the issue is not whether or not this expert should be excluded because some other expert disagrees with them. If that were the case, every expert would be excluded in every case because there's always two experts on either side of the case, and one says one thing and one says the other. Experts are not supposed to be excluded unless they are really coming forth with junk science. So I think, putting that aside, she's relying on the methodology. She says she's relying on the R&D. And the director of the R&D says that the disconnect dates are not publicly accessible through the R&D public query. And then the other problem that you have is the director of Pacific East, which she says she's going to use as reverse phone opinion, says that this is not reliable. So that's not relying on the expert that they presented. That's the relying. In order for her to do the methodology or use the methodology that she's proposing, she's saying I'm going to use the R&D and then I'm going to use the Pacific East. But they're saying that it's not reliable. It's not ascertainable and it's not reliable. Well, I would politely correct the court's position that they said it's not available. They said in the public interface it's not available. But the R&D is a list. All it is is a list of disconnected phone numbers. That's all the R&D is. But it won't tell you when it was disconnected. It won't tell you on the public interface, but they have those records which can be subpoenaed. And they come from carrier records. And Mr. Hubbard referenced the T-Mobile records in this case. The T-Mobile records indicated the date of disconnect from Mr. E.T. and the date Mr. Davis became the owner and user of that telephone. It's exactly as Ms. Verkuskaya testified would be used to do it. And the R&D was one piece of this identification methodology. If you took out the R&D completely. And I guess the other problem you have is that it's incomplete because your class period is the four years. And this R&D doesn't come into full existence, I think, until October or November of 21. Correct. So you're missing two years of your class period. So it's incomplete. Well, it's only incomplete if that was our sole basis of determining these numbers. The carrier subpoenas are not limited in that time frame. And the carriers are the ones that provide the information to the R&D. So a subpoena to the carrier for records before that period of time would indicate the dates of disconnect. It's not as clean because the R&D is simple. The reason we chose to use the R&D is it is one place where the dates of disconnect are the only thing they have. That's what they have. But the carrier records, and Mr. Davis' records indicate this, do indicate the dates of disconnect and who got the phone number afterwards. So how are you going to identify the carrier, then? Through your reverse phone appearance? I mean, are you just going to? The carrier can be determined through the phone numbers. And there's a process that the claims administrators use to do this. This is not a unique thing to the TCPA or wrong number cases. In every case, someone has to be determined who has the violation or might have the violation. But in every other case, there's not a class certified, right? You're suggesting that there's a methodology for an entire class, not an individual. Yes. Well, but if it works for the individual, it by definition works for the class, right? It's a process where once you have these telephone numbers, you simply subpoena the carriers. You see the date that the person had the phone that they were trying to call, and let's say Mr. E.T., and you see the phone number and the person who had it after that. And if there were prerecorded calls to that person after the date they got the phone. But for each person, there's going to be a different carrier, a different time, a different story. Well, but that can be true. In securities cases, you have to determine who had the stock, when they had it, when they bought it. This is not unique to a TCPA case or a wrong number case. It's a different application, but it occurs in every class case because you have to determine at some point whether the person is in the class and whether they're entitled to recover. All right. Any other questions? No. Thank you. Thank you. All right. We will thank you, counsel. We will step down and greet you, and remember, just voice up here after Judge Barra.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, Henry F. Floyd